No. 26,840.

THE STATE OF KANSAS, ex rel. R. B. SMITH, County Attorney of Neosho County, *Appellee,* v. RURAL HIGH-SCHOOL DISTRICT No. 1 et al., *Appellants.*

SYLLABUS BY THE COURT.

1. SCHOOLS—*Creation of Rural High-school District—Taxation Value of Property.* In determining the taxation value of all the property in a proposed high-school district and whether it is up to the standard essential to an organization as fixed by chapter 241 of the Laws of 1925, consideration is. not confined to the first and partial return made by the deputy assessor of property in the district subject to taxation.

2. SAME—*Omitted Taxable Property.* Account may be taken of omitted taxable property in the district which was afterwards assessed and return thereof made prior to the organization of the district.

3. SAME—*Omitted Taxable Property—Defects in Notice of Assessment.* Certain defects in the matter of notice to taxpayers of the assessment of omitted property who are not questioning the validity of the assessment are held not to require the exclusion of such assessments in determining the aggregate valuation of taxable property in the district necessary to an organization.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed May 8, 1926. Reversed.

*James W. Finley, James A. Allen* and *B. M. Dunham,* all of Chanute, for the appellants.

*T. R. Evans,* of Chanute, and *J. M. Humphrey,* of Erie, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought in the name of the state on the relation of the county attorney of Neosho county to test the validity of the establishment and organization of a rural high-school district in Neosho county. The trial court held and adjudged

---

Schools and School Districts, 35 Cyc. p. 837 n. 6.

that the establishment and organization of the district attempted was illegal and void, and enjoined the defendant officers from extending and collecting taxes on property within the proposed district. Defendants appeal.

A petition for the organization of the district was presented to the board of county commissioners on April 13, 1925, asking the calling of a special election to vote on the proposition of establishing and organizing the district and also to vote bonds for the erection of a school building. Pursuant to the petition the board ordered that an election be held on May 6, 1925, but because of a defect in the publication, the board issued another call based on the same petition for an election to be held on July 7, 1925, to vote on the question of organization, but did not submit the question of voting bonds for the erection of a school building. An election was held at that time and the proposition was carried by a majority of fifty-four votes. The proceedings appear to be valid, providing there was sufficient taxable property within the proposed district to warrant its organization. The amount of taxable property within the district is the contested question and the turning point in the case.

"That in the formation of all high-school districts within the state of Kansas, the basis for organizing and operating the same shall be the value of the property as determined by the tax assessment within the boundaries of districts so formed, and no consideration shall be given to or used in estimating the expense of so organizing and operating such high-school district other than the actual assessment and taxation value of all the property therein determined and fixed by the proper assessor." (Laws 1925, ch. 241, § 1.)

"That no high-school district shall be organized within the state of Kansas the aggregate value of property of which, as determined by the returns of the tax assessor, shall be less than two millions ($2,000,000)." (Laws 1925, ch. 241, § 2.)

In his first inspection the assessor returned a valuation of $1,-987,381. This return was made the latter part of May, 1925. Later, and on July 25, the assessor in looking for property which had escaped his notice, found one parcel of property of the value of $4,750, and also intangible property to the amount of $10,600, and made return of the same to the county clerk. Then on August 3, an additional item of the value of $300 was returned. On August 4, a return of additional personal property, a drilling rig, of the value of $2,000 was made, and another return was made on August 4 of an assessment of additional real estate to the value of

State, *ex rel.*, v. Rural High School.

$6,100. The returns so made by the assessor of escaped property amounted to $23,750, and all these returns were sent in after the first return was made. It was shown and found by the court that $15,050 of mortgages had been filed of record with the register of deeds on property owned by persons within the district, on which the statutory fees had been collected. It is contended that only the valuation first returned can be considered in determining the taxable property within the district, and that any property omitted or improperly assessed can only be brought upon the tax rolls in a particular way pointed out by statute, which if not followed does not give authority to the assessor to return omitted property or be considered as a basis for the formation of a school district. Further, it is contended that the county clerk, who is the county assessor, did not comply with the requirements of the statute by serving notice on the owners of the omitted property. It does appear that he sent a post card to the owners of the property assessed, but it is said that this notice is jurisdictional, as the owners of the property must be given five days' notice in which to appear and answer questions touching the taxability of the property.

On the part of the district, it is contended that the post-card notice is the customary and a legal method employed in adding omitted property. The assessor had been requested by the county clerk, according to the regular custom, to go over the district again and pick up any property omitted on the first inspection. On the first return the taxable valuation of the district lacked $12,619 of coming up to the two million valuation necessary to the formation of a high-school district. The "picked up" property returned after the first inspection and report added a valuation of $23,750, aside from mortgages of the value of $15,050 owned by residents of the district and upon which the statutory fee had been collected between March 1, 1925, and May 25 of that year. Taking the taxation value of all the property in the district as fixed by the proper assessors there was sufficient basis for the organization of the district without giving consideration to the mortgages on which the fees had been collected. The manifest purpose of the legislature was that there should be sufficient taxable property in the district to provide adequate support for a high school, and the statute is to be interpreted in the light of this purpose. The question is not determinable by a first or partial return of an assessor, but is governed by the taxation value of all the property in the district as

fixed by any proper assessor. The first section of the controlling act provides that in determining the valuation—

"No consideration shall be given to or used in estimating the expense of so organizing and operating such high-school district other than the actual assessment and taxation value of all the property therein determined and fixed by the proper assessor." (Laws 1925, ch. 241, § 1.)

Was there sufficient taxable property in the proposed district to reach the statutory requirement as fixed by the proper assessor before the district was organized? The legislature has provided that property not expressly exempt shall be subject to taxation. (R. S. 79-101.) It does not appear that any of the omitted property subsequently assessed was exempt or not subject to taxation. The objections are that it was not included in the first report of the deputy assessor, was not assessed in due time nor in the proper way. The property subsequently added was located in the district and it was subject to taxation. It was assessed by the proper officer and a return of the assessment made to the county clerk. Property does not escape taxation and is not to be eliminated from consideration in determining the taxation value because it was not assessed on a first inspection of the deputy assessor. It was the duty of the county clerk, who was acting as an assessor with supervision over the appointed deputies, to correct returns of omitted property and charge the taxpayer with the proper amount of taxes on any property subject to taxation which was omitted or undervalued, and this he could do at any time before the final settlement with the county treasurer. (R. S. 79-1432.) Another statutory provision is that—

"It shall be the duty of the county clerk to assess at a fair value the property of any person liable to pay taxes which the county assessor has failed to assess, and to place the same upon the tax roll," etc. (R. S. 19-314.)

It is suggested that this provision has become obsolete by reason of later legislation. In its present form it was included as a part of the revision of 1868. (Gen. Stat. 1868, ch. 25, § 53.) A statute was enacted in 1876 relating to the correction of assessments which covered in part the powers vested in the county clerk by the earlier act. That act has remained in the statutes since 1868, and was included in the report of the revision commission and was reënacted by the legislature of 1923. It cannot be regarded as without force in any case to which it is applicable. The duty to assess omitted property did not end with the first return of deputy assessor, and if

the assessor had failed to do his duty its performance could have been compelled even after the tax rolls had been turned over to the county treasurer. (*State v. Holcomb*, 81 Kan. 879, 106 Pac. 1030.) It is further argued that the added assessments were ineffective for the reason that sufficient notices were not given to the taxpayers. As has been stated written notices were sent to them through the mails, and there is nothing to show that any taxpayer has complained of a lack of notice, and nothing has been shown to the effect that the property was not taxable or had been improperly assessed. The statute provides that a five days' notice shall be given by leaving a notice with the taxpayer if he be a resident, and if a nonresident it may be sent through the post office, and this is to be done before entering the increased valuation on the tax rolls. The sufficiency of the notice is a personal right of the taxpayer and is a question to be raised by him if he objects to an assessment. Since it does not appear that the property owners have made any objection or taken any exception to the assessment made, the added property cannot be excluded from consideration in determining the valuation of the taxable property in the district as fixed by the assessor. Mere informalities or irregularities by the assessors in the making of the return does not vitiate the assessment or the tax based thereon. (*Johnson County v. Hewitt*, 76 Kan. 816, 93 Pac. 181.) A substantial compliance with the statute has been made. A valuation of the added property has been fixed by the assessor, and this assessment and valuation has not been questioned by the persons for whose protection it was given, and has never been set aside. We think that taxable property so assessed prior to the completion of the organization of the district should be treated as a part of the taxation value of the district.

Under the act it was essential that there should be the required valuation before the organization of the district. Organization was effected when the officers were elected and had qualified. An election of officers was held on August 4, 1925, and later the persons previously elected qualified and proceeded to the performance of their duties until the present action was begun on August 7, 1925. Before the organization was completed, omitted property to the amount of $23,750 had been assessed by the officers and a return made to the office of the county clerk. On July 25, 1925, enough omitted property had been added to make the aggregate assessed valuation of the district more than the standard amount fixed by

the legislature. To reach a decision in this case it is unnecessary to consider the status of mortgaged property in the district which amounted to $15,050 upon which fees had been collected. An assessor does not assess and make a return of that class of property, but the assessment has been made by the legislature and is paid in what is called fees. This process is a substitute for an ordinary property tax, and the payment of the prescribed fees relieves the mortgages from other taxation. Whether it should be considered as taxation value under the statute in question may be left for future decision when the inclusion of such property is necessary to a determination of a controversy. Under the admitted facts and findings of the trial court its decision should have been given in favor of defendants.

The judgment is therefore reversed, with the direction to enter judgment for the defendants.